BOARD OF DIRECTORS OF INDEPENDENT SCHOOL DISTRICT OF
WATERLOO, properly known as: The Independent School Dis-
trict of the City of Waterloo in the County of Black Hawk.
State of Iowa, appellant, v. RONALD GREEN, appellee.

No. 52296.

1262

January 10, 1967.

Parker, Reed, Sindlinger, Baker & Reed, by Wallace B. Reed, of Waterloo, for appellant.

Fulton, Frerichs & Nutting, by C. A. Frerichs, of Waterloo, for appellee.

Blythe C. Conn, of Des Moines, amicus curiae.

Rawlings, J.—By an action in equity plaintiff student in the East Waterloo Public High School sought to enjoin defendant Board of Directors of the Independent School District from enforcing its previously adopted rule excluding all married pupils from participation in any extracurricular activities. The trial court granted relief prayed and the board appeals. We find defendant entitled to a reversal.

1264

Plaintiff, Ronald Green, being fully aware of the then existing school board rule, was married August 6, 1965.

He had previously been a regular player on the basketball team and desired to participate in the sport during his senior year but was advised this would not be permitted due to the rule.

It is plaintiff's contention the rule is arbitrary, unreasonable, irrational, unauthorized, irreparably injurious, and he has no adequate remedy at law.

Defendant board denies the claim made by plaintiff, asserts participation in extracurricular activities is a privilege, the rule is reasonable, it applies to all students, is authorized by law, plaintiff failed to exercise the administrative right of appeal provided by law and he is not entitled to injunctive relief.

I. Our review is de novo. We will examine the facts as well as the law and draw therefrom such conclusions as are found to be just and proper under all the circumstances. Rule 344, R. C. P.; Baker v. Starkey, 259 Iowa 480, 144 N.W.2d 889, 895; and Simpkins v. Simpkins, 258 Iowa 87, 92, 137 N.W.2d 621, 624.

II. Prior to presentation of arguments on appeal plaintiff graduated from high school, but this alone does not serve to dispose of this case.

In general an action is moot if it no longer presents a justiciable controversy because the issues involved have become academic or nonexistent. It has also been said a case is moot when a judgment, if rendered, will have no practical legal effect upon the existing controversy. But, in actions where injunctive relief is sought, the cessation or completion of the objectionable act does not necessarily render the issue moot. Danner v. Hass, 257 Iowa 654, 660, 661, 134 N.W.2d 534, 538, 539; Gunnar v. Town of Montezuma, 228 Iowa 581, 584, 293 N.W. 1; Gray v. Sanders, 372 U. S. 368, 375, 376, 83 S. Ct. 801, 806, 9 L. Ed.2d 821; and Sigma Chi Fraternity v. Regents of University of Colorado, 258 F. Supp. 515, 523.

When the issue presented is of substantial public interest there exists a permissible exception to the general rule that a case which has become moot or presents only an academic question will be dismissed on appeal.

Among the recognized criteria for determination of ex-

istence of the requisite degree of public interest are: (1) the public or private nature of the question presented, (2) desirability of an authoritative adjudication for future guidance of public officials, and (3) likelihood of future recurrence of the same or similar problem.

■ Applying these guidelines we find the present case falls within that important area involving the administration, operation, management and control of our public school system.

Here the challenged rule remains and we are persuaded the school officials are reasonably and justly entitled to a determination of its legality and enforceability.

Furthermore the very urgency which presses for prompt action by public officials makes it probable any similar case arising in the future will likewise become moot by ordinary standards before it can be resolved by this court.

Under these circumstances the issue presented in this case should be now adjudicated.

In support of the foregoing see also 5 Am. Jur.2d, Appeal and Error, section 768, page 210.

■■ III. Another preliminary matter to be resolved is the claim of defendant board·to the effect plaintiff is by law confined to an appeal to the county superintendent and then to the State Board of Public Instruction. Code sections 290.1 and 290.5. With this we cannot agree.

Decisions of local boards involving the exercise of their discretion must ordinarily be appealed to the county superintendent and the state board.

However, where jurisdiction and power of a board of directors of a local school district are placed in question, or in cases involving construction of statutes conferring authority upon school officers, the courts of the state are the sole arbiters. Center Township School Dist. v. Oakland Independent School Dist., 251 Iowa 1113, 1117–1119, 104 N.W.2d 454; Altman v. Independent School Dist. of Gilmore City, 239 Iowa 635, 641, 32 N.W.2d 392; Courtright v. Consolidated Independent School Dist. of Mapleton, 203 Iowa 26, 30, 212 N.W. 368; 79 C. J. S., Schools and School Districts, section 495, page 444; and 47 Am. Jur., Schools, section 47, page 328.

The trial court had jurisdiction to entertain this cause of action.

■ IV. The operation of the public schools of this state under and in accord with applicable statutes is clearly vested in the duly elected directors of the various local school boards. This includes authority to adopt rules for its own government and that of all its pupils. See Code sections 277.23–277.30, 274.1, 274.7, and 279.8.

The board of directors of each school district is its governing body. Center Township School Dist. v. Oakland Independent School Dist., 251 Iowa 1113, 1120, 104 N.W.2d 454.

■ V. It is also understood that where a school board has acted pursuant to law, the action taken must be regarded at least as prima facie correct. It will be considered by our courts as lawful and valid until the contrary is shown. Smith v. District Township of Knox, 42 Iowa 522, 525; 79 C. J. S., Schools and School Districts, section 495, page 444; and 47 Am. Jur., Schools, section 47, page 328.

■ VI. Furthermore courts of equity will not ordinarily interfere by injunctive process with the actions of subordinate political or municipal tribunals, including school boards. And, where matters are by law left to the discretion of such bodies, the exercise of that discretion, in good faith, absent fraud, will not be disturbed. Green v. Webster County Bd. of Ed., 253 Iowa 1198, 1201, 115 N.W.2d 856; Clay v. Independent School Dist. of Cedar Falls, 187 Iowa 89, 98, 174 N.W. 47, and citations; Tinker v. Des Moines Independent Community School Dist., 258 F. Supp. 971, 972; 43 C. J. S., Injunctions, section 112, page 638; and 28 Am. Jur., Injunctions, section 176, page 678.

■ VII. School boards are charged by law with the important and at times difficult task of operating our public schools. In so doing they are permitted to formulate rules for their own government and that of all pupils. With this they have the right to require compliance with any duties imposed by law and the rules. Code sections 274.1, 274.7, and 279.8.

These boards can exercise only that authority conferred by law or implied therefrom. Center Township School Dist. v. Oakland Independent School Dist., 251 Iowa 1113, 1120, 104 N.W.2d 454.

And, it is not within their power to govern or control the individual conduct of students *wholly* outside the schoolroom or playgrounds. However, the conduct of pupils which directly relates to and affects management of the school and its efficiency is a matter within the sphere of regulations by school authorities. Lee v. Hoffman, 182 Iowa 1216, 1223–1225, 166 N.W. 565, L. R. A. 1918C 933, and Kinzer v. Directors of Ind. Sch. Dist. of Marion, 129 Iowa 441, 445, 446, 105 N.W. 686, 3 L. R. A., N.S., 496, 6 Ann. Cas. 996.

 The courts of this state are not concerned with the wisdom of discretionary acts on the part of school boards in adopting rules and regulations governing the operation, management and conduct of our schools.

 Stated otherwise it is not for us to concern ourselves with the matter of expediency of a given board rule. The duty of all courts, regardless of personal views or individual philosophies, is to uphold a school regulation unless it is clearly arbitrary and unreasonable. Any other approach would result in confusion detrimental to the management, progress and efficient operation of our public school system. It would in effect serve to place operational policies of our schools in the hands of the courts which would be clearly wrong if not unconstitutional.

The problem here presented is not whether this court, sitting in the position of defendant board, would or would not have adopted the challenged rule. Rather, our task is to determine whether it is so unreasonable and arbitrary as to be illegal, void and unenforceable. In support of the foregoing see 79 C. J. S., Schools and School Districts, sections 493–496, pages 442–445, and 47 Am. Jur., Schools, sections 45–47, pages 326–329.

VIII. So the question presented is whether plaintiff established defendant board abused the discretion vested in it by law in adopting and attempting to enforce the rule precluding married students from participating in extracurricular activities.

We turn now to the case made by plaintiff.

One witness stated, "his reputation for general moral character in the community is excellent." This is not disputed.

Testifying in his own behalf plaintiff stated he was 17 years old when married, and admitted he then knew of the rule to which he takes exception. His grades improved after the cere-

mony. He was told his participation in school basketball would not be possible because of the challenged rule.

IX. On the other hand defendant board disclosed the policy considerations which prompted adoption of the rule were as follows:

1. Married students assume new and serious responsibilities. Participation in extracurricular activities tends to interfere with discharging these responsibilities.

2. A basic education program is even more essential for married students. Therefore, full attention should be given to the school program in order that such students may achieve success.

3. Teen-age marriages are on the increase. Marriage prior to the age set by law should be discouraged. Excluding married students from extracurricular activities may tend to discourage early marriages.

4. Married students need to spend time with their families in order that the marriage will have a better chance of being successful.

5. Married students are more likely to drop out of school. Hence, marriage should be discouraged among teen-age students.

6. Married students are more likely to have undesirable influences on other students during the informal extracurricular activities.

7. The personal relationships of married students are different from those of non-married students. Non-married students can be unduly influenced as a result of relationships with married students.

8. Married students may create school moral and disciplinary problems, particularly in the informal extracurricular activities where supervision is more difficult.

We need not engage in any detailed analysis of these motivating factors. While some of them may approach the area of paternalism, others are clearly within the realm of control granted by law to the school boards of this state.

The board president, school superintendent, director of guidance servicing, vice-principal of East Waterloo High School, and one of the teachers, all testified to the effect the number of high school age marriages has recently increased to a point

of real concern; marriage always imposes new responsibilities and often heavy financial burdens upon students which serve as a distraction or require out-of-school time-consuming employment; ordinarily marriage is followed by lowered grades; school dropouts have increased to an alarming degree, greater proportionately as to married-pupils than those not married; and some married students tend at times to discuss with others intimate details concerning their marriage relationship, particularly among those participating in extracurricular activities where close supervision is more difficult than elsewhere. A statistical survey for the years 1960-1965 discloses that out of 139 married students 97 were dropouts, with only 42 graduating.

It is to us apparent defendant board cannot be held to have acted unreasonably or arbitrarily in concluding marriage by high school students is a contributing factor in connection with the dropout problem which, with other circumstances attendant upon matrimony, interferes with and creates some difficulties in the administration of school affairs. Under these circumstances it is apparent the Waterloo School Board had sufficient reasonable cause to enact the challenged regulation.

X. We do not consider the rule here in question to be violative of public policy in that it penalizes persons because of marriage.

The law looks with favor upon marriage and seeks in all lawful ways to uphold this most vital social institution.

However, that policy is basically referable to those of lawful age who enter into the marital relationship. As to underage marriages the legislative policy may be said to be otherwise. See Code sections 595.2, 595.4, and 595.8.

XI. Neither does the subject rule, in itself, deny to any student equal protection of the laws.

According to the record plaintiff asserted no violation of any constitutional rights or privileges. However, the answer by defendant board indicates the issue was raised by the pleadings.

In addition the point has been argued on appeal and we accordingly entertain it.

The board rule here involved creates two classes of students in the field of extracurricular activities alone, to wit:

1270

Those married and those who have not entered into a marital relationship.

Plaintiff apparently contends this differentiation violates Amendment 14, Constitution of the United States. That argument is without substance.

Mere differentiation is not enough to constitute a denial of equal protection. In fact statutes and school board rules often create classifications which are valid and enforceable. It is only invidious discrimination which offends constitutional rights. See Griffin v. County Sch. Bd. of Prince Edward County, 377 U. S. 218, 230, 84 S. Ct. 1226, 1233, 12 L. Ed.2d 256; Dickinson v. Porter, 240 Iowa 393, 400–414, 35 N.W.2d 66; and Lee v. Hoffman, 182 Iowa 1216, 1221–1223, 166 N.W. 565, L. R. A. 1918C 933.

Conclusions adverse to any denial of equal protection by reason of existence of the rule with which we are here dealing are fully and effectively set forth in Starkey v. Board of Education of Davis County Sch. Dist., 14 Utah2d 227, 231, 381 P.2d 718, where at 721 the court stated:

"We have no disagreement with the proposition advocated that all students attending school should be accorded equal privileges and advantages. But the participation in extracurricular activities must necessarily be subject to regulations as to eligibility. Engaging in them is a privilege which may be claimed only in accordance with the standards set up for participation. It is conceded, as plaintiff insists, that he has a constitutional right both to attend school and to get married. But he has no 'right' to compel the Board of Education to exercise its discretion to his personal advantage so he can participate in the named activities."

See also Lee v. Hoffman, 182 Iowa 1216, 1218–1227, 166 N.W. 565, L. R. A. 1918C 933; Walters v. City of St. Louis, Mo., 347 U. S. 231, 237, 74 S. Ct. 505, 509, 98 L. Ed. 660; Board of Trustees of University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827 (affirmed 237 U. S. 589, 35 S. Ct. 720, 59 L. Ed. 1131); Kissick v. Garland Independent School Dist., Tex. Civ. App. 330 S.W.2d 708, 711; and annotation, 10 A. L. R.3d 391.

XII. We conclude the rule adopted by defendant board barring married students from participating in extracurricular

activities is neither arbitrary, unreasonable, irrational, unauthorized nor unconstitutional. In taking this position we do not stand alone. See Kissick v. Garland Independent School District, supra; Starkey v. Board of Education of Davis County Sch. Dist., 14 Utah2d 227, 381 P.2d 718; State ex rel. Thompson v. Marion County Board of Education, 202 Tenn. 29, 302 S.W.2d 57; State ex rel. Baker v. Stevenson, Ohio Com. Pl., 189 N.E.2d 181; and Cochrane v. Mesick Consolidated School Dist. Bd. of Ed., 360 Mich. 390, 103 N.W.2d 569.

The judgment of the trial court must be reversed.—Reversed.

All JUSTICES concur except THORNTON, MASON and BECKER, JJ., who dissent.