Carolyn GABRILSON, Appellant,

v.

Peter FLYNN, Custodian of the Records of the Davenport School District, Appellee.

No. 95–619.

Supreme Court of Iowa.

Sept. 18, 1996.

Rehearing Denied Oct. 22, 1996.

Jeffrey S. Bittner of Carlin, Hellstrom & Bittner, Davenport, for appellant.

Ralph D. Sauer and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., and Carole J. Anderson of Lane & Waterman, Davenport, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

SNELL, Justice.

Plaintiff, Carolyn Gabrilson, sought to obtain, through a writ of mandamus and injunctive relief, copies of a performance assessment test given to Davenport Community School district students. She sued Peter Flynn, the school's superintendent, as the custodian of the records. Her petition demanded disclosure, asserted a violation of chapter 22 of the Iowa Code, the Examination of Public Records Act, and sought damages of $500, costs, and attorney fees. The district court denied the relief sought by Gabrilson, ruled that the records were confidential, and granted appellee's request for injunctive relief against Gabrilson. Gabrilson appealed. We affirm in part and reverse in part.

## I. Factual and Procedural Background

This case concerns a performance assessment test developed by the staff of

the Davenport Community School district to be taken by all eleventh grade students as a requirement for graduation. The test purports to measure students' problem solving abilities and their competence. After its development, a portion of the test was administered to a group of students in order to assess its usability and samples of the assessment were made available by · the district for inspection. After she became aware of the assessment program, Gabrilson, a member of the school board, asked for and received a copy of the field-tested version from a district secretary. She then publicly denounced the assessment as being politically based and charged that it improperly espoused "outcome based" educational philosophy. The majority of the school board did not agree with her criticisms. The district responded by copyrighting the test and ordered Gabrilson to return all copies in her possession. She refused to turn over the copy she had received and requested that the district provide her with any unreleased scoring rubrics and other materials related to the assessment. Defendant Flynn, the superintendent of the Davenport schools, refused to provide the examination and rubrics scheduled to be administered to eleventh graders that following fall. Defendant based his refusal on the statutory exceptions to the Iowa open records law, claiming that the materials were confidential trade secrets and statutorily protected examinations. Gabrilson then proceeded to distribute the field tested assessment in her possession to a radio talk show host and to other members of the media.

Plaintiff filed a petition for writ of mandamus and/or injunctive relief to compel Flynn to turn over copies of the assessment, pursuant to chapter 22 of the Iowa Code. In Count I of her petition, Gabrilson requested copies of the assessment as a private citizen. Count II made the same request in her capacity as a school board member. Defendant Flynn filed a motion to strike and the district court dismissed Count II, ruling that Gabrilson's status as a school board member gives her no more rights than an ordinary citizen under chapter 22. Count I was al-

lowed to proceed, but upon motion for summary judgment by both parties, the district court ruled the issue was moot because Gabrilson had already received a copy of the assessment, and any determination of the confidentiality of the material would be purely academic in nature. The court also denied plaintiff's claim for damages because it did not adjudicate whether a chapter 22 violation occurred. In addition it determined Flynn met the good faith requirements of the chapter by reasonably relying on the advice of counsel in denying the disclosure.

Both parties filed Iowa Rule of Civil Procedure 179(b) motions to enlarge the district court's findings. The district court granted the motions and proceeded to find that, as a matter of law, the tests and scoring rubrics were confidential as statutorily excluded examinations under section 22.7(19). The court enjoined Gabrilson from copying, distributing, or disseminating in any manner the assessment and the corresponding scoring rubrics, pursuant to section 22.8. The court did not resolve the issue of whether the assessments were trade secrets, instead relying upon section 22.8 as an independent avenue of relief, irrespective of the confidentiality of the assessment. It is from this summary judgment ruling that plaintiff appeals, along with an appeal of the district court's decision to strike Count II of her initial petition which sought relief on the basis of her status as a school board member.

## II. Confidentiality of Assessments

### A. Standard of Review

Our review of summary judgment orders is for correction of errors at law. Iowa R.App. P. 4; *Ciha v. Irons*, 509 N.W.2d 492, 493 (Iowa 1993). We will uphold a summary judgment when the movant shows there is no genuine issue of material fact and is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *C–Thru Container Corp. v. Midland Mfg. Co.*, 533 N.W.2d 542, 544 (Iowa 1995). In reviewing the record, we will consider the evidence in the light most favorable to the non-moving party. *Hoffnagle v. Mc-*

*Donald's Corp.,* 522 N.W.2d 808, 811 (Iowa 1994).

## B. Confidential Examinations

■ Iowa's open records law, as codified in chapter 22 of the Code, ensures that "[e]very person shall have the right to examine and copy public records and to publish or otherwise disseminate public records or the information contained therein." Iowa Code § 22.2(1) (1995). We have found the purpose of this statute to be "to open the doors of government to public scrutiny to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Iowa Civil Rights Comm'n v. City of Des Moines,* 313 N.W.2d 491, 495 (Iowa 1981). Similarly, chapter 22 "establishe[s] a liberal policy of access from which departures are to be made only under discrete circumstances." *City of Dubuque v. Telegraph Herald, Inc.,* 297 N.W.2d 523, 526 (Iowa 1980). Accordingly, there is a presumption of openness and disclosure under this chapter. *Id.* at 527.

■ Section 22.7 provides specific exceptions to the otherwise liberal policy of access. This court has held these exceptions are to be construed narrowly, subject to two caveats. *Id.* First, the "narrow construction" principle should not be over utilized such that its use frustrates legislative intent. *Id.* Second, where the expressed exception is broadly inclusive, the narrow construction principle will not aid in the determination of legislative intent. *Northeast Council on Substance Abuse, Inc. v. Department of Pub. Health,* 513 N.W.2d 757, 759 (Iowa 1994); *City of Sioux City v. Greater Sioux City Press Club,* 421 N.W.2d 895, 897 (Iowa 1988).

At issue here are two enumerated exceptions to disclosure, found at sections 22.7(3) and 22.7(19). Section 22.7 provides:

The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:

. . . .

3. Trade secrets which are recognized and protected as such by law.

. . . .

19. Examinations . . . to the extent that their disclosure could reasonably be believed by the custodian to interfere with the accomplishment of the objectives for which they are administered.

■ We will first address whether the assessment is excluded under the examination exception of section 22.7(19). Plaintiff does not contend that the eleventh grade assessment does not sufficiently constitute an "examination" such that it would not fall within the scope of section 22.7(19). Rather, she claims that since the test has already been circulated to the public (both by her own actions and allegedly by those of the district) it is no longer confidential and thus should no longer be exempted from release. Plaintiff bases her argument on the statutory construction of the word "confidential." She argues the assessment should not be considered confidential because it is available for public inspection at the Library of Congress (as a result of the district's copyright application), a copy was previously given to plaintiff (who proceeded to distribute it to the public), and a general publication of its content occurred prior to the copyright application (when the assessment was field tested). According to the plaintiff, the assessment is not confidential as a result of these circumstances.

■ Plaintiff, however, has misconstrued the language of section 22.7. Section 22.7(19) specifically excludes examinations from the general rule of disclosure, characterizing them as being confidential by their very nature. Accordingly, section 22.7 does not exclude a general class of records labeled as "confidential" as the plaintiff would argue, but instead provides that certain, expressed types of public records *shall be kept confidential,* one type of which is examinations. Iowa Code § 22.7. In other words, the assessment's confidentiality as it relates to chapter 22 is dependent on its being an examination whose disclosure the custodian reasonably believes would destroy the objectives of the test. *Id.* The statute makes no reference to any other extrinsic factors to be considered in making such a determination and it is not required that the examination be

kept from all eyes but the custodian's. Even if records are deemed to be confidential, the custodian still may disclose them, subject to the constraints of the law. Such disclosure does not remove them from the general protection of section 22.7 as it relates to the public. *See, e.g., Citizens' Aide/Ombudsman v. Miller,* 543 N.W.2d 899, 900 (Iowa 1996) (holding investigatory power of citizens' aide allows disclosure of otherwise confidential records, but confidential status is maintained); *Iowa Civil Rights Comm'n,* 313 N.W.2d at 495 (holding statutory exceptions are inapplicable when Commission issues subpoena *duces tecum,* but other protections afforded by law may apply).

In making a determination of whether the assessment is a confidential record, it is necessary to decide whether Flynn reasonably believed that its disclosure would interfere with the stated objectives of the examination. Iowa Code § 22.7(19). The district court found as a matter of law that he did reasonably so believe, and the record supports this determination. Both Flynn's testimony by deposition and the affidavit submitted with his motion for summary judgment are uncontested and are consistent with the district court's determination. Plaintiff contends that because the school district had already released copies of the assessment to the public via the field testing, there could be no reasonable expectation that release in its entirety would be detrimental to its objectives. We disagree. It was reasonable for Flynn to believe that a full disclosure would jeopardize the integrity of the assessment; to allow students and parents unfettered access to examination questions, answers, and scoring rubrics would defeat the purpose of the assessment. Certainly, it is a reasonable belief that an examination whose questions and answers are known by the students beforehand cannot adequately assess the students' problem solving abilities.

Neither the field testing of the assessment nor its actual administration to the students removes it from the protection of section 22.7(19). In this sense, the field testing of the assessment can be analogized to what is referred to as a "limited publication" under copyright law. A copyright is not destroyed by a limited publication which "occurs when tangible copies of the work are distributed, but to a limited class of persons and for a limited purpose." *Burke v. National Broadcasting Co.,* 598 F.2d 688, 692 (1st Cir.), *cert. denied,* 444 U.S. 869, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979); *see also White v. Kimmell,* 193 F.2d 744, 746–47 (9th Cir.), *cert. denied,* 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952) (holding a limited publication "communicates the contents of a [work] to a definitely selected group and for a limited purpose, . . . ."). Here, the assessment was distributed for field testing to a select group of students for the limited purpose of determining the examination's usefulness, not to place it into general circulation in the community. The field testing did not compromise the assessment's confidentiality since it occurred prior to the district's assertion that it was confidential. Presumably, Flynn did not believe that field testing would destroy the objectives of the examination, thus there was no issue of breach of confidentiality.

Gabrilson further contends that because the district secretary provided her with a copy of the test, it has lost its confidentiality. We find no authority, however, for the proposition that these documents are removed from the definition of confidential records merely because they have erroneously been released. In fact, the record indicates that the secretary was never authorized to release the assessment. The affidavits of both the secretary and her superior indicate that the release of the materials to Gabrilson was unauthorized. Both of these affidavits are uncontested. Thus, the district court was correct in its finding that Flynn made a reasonable determination that release would be detrimental to the objectives of the assessment.

### C. Trade Secrets

Plaintiff urges us to consider whether the content of the assessment sufficiently constitutes a trade secret and what effect, if any, federal copyright law has on its confidentiality as it relates to section 22.7(3). Having found, however, that the assessment is excluded from disclosure by section 22.7(19), this issue need not be resolved as it has no

bearing on the outcome of the case. There is no allegation of copyright infringement or misuse of a trade secret so we need not reach this question.

### D. A Balancing of Policy Interests Is Not Required

■ Plaintiff argues that even if the assessment is deemed confidential under section 22.7, we must still engage in a balancing test to determine whether the public's "right to know" outweighs the school district's interest in secrecy. Gabrilson cites *Northeast Council* for the proposition that, after determining the examination is confidential under section 22.7, we must then engage in a balancing test of policy interests. In *Northeast Council*, however, the law was clearly established to the contrary. "We repeat that it is not our responsibility to balance competing policy interests. This balancing is a legislative function and our role is simply to determine the legislature's intent about those policy issues." *Northeast Council*, 513 N.W.2d at 761. When construing section 22.7(19) narrowly, the only statutorily expressed extrinsic factor to be considered is whether the custodian reasonably believes that disclosure would frustrate the purpose of the examination. There is no indication that the legislature sought a balancing of policy interests when construing section 22.7(19), as plaintiff proposes. *Cf. Hawk Eye v. Jackson*, 521 N.W.2d 750, 753 (Iowa 1994) (holding language of section 22.7(5) exception expressly requires a three part balancing test); *Northeast Council*, 513 N.W.2d at 761 (holding language of § 22.7(6), "Reports to governmental agencies which, if released, would give advantage to competitors and serve no public purpose" requires a balancing of policy interests).

In addition, plaintiff asserts that the confidential protection afforded the assessment by section 22.7(19) only applies *before* it is administered. Once the examination is given, she contends, then the public right to know its content outweighs any school interest in maintaining its confidentiality. She cites no authority for the proposition that the assessment should be treated differently once it is administered. In determining that the assessment is a confidential record under section 22.7(19), we find no distinction between the need for confidentiality before it is administered and after. The record indicates that Flynn, as custodian of the records, reasonably believes that release of the assessment and the corresponding scoring rubrics would be detrimental to the objectives of the examination. There is no indication that the same reasons behind this belief do not hold true both before the assessment is administered and after. To compel disclosure after administration would force the school district to develop a new assessment each year—a result which certainly is unreasonable and untenable. Thus, we construe section 22.7(19) as not requiring a determination of whether the public "right to know" outweighs the school district's interest in maintaining the confidentiality of the assessment or whether the school district can "evaluate school children in secrecy."

### III. Section 22.8 Injunction

In granting injunctive relief to Flynn, the district court chose to use the remedy provided by section 22.8, rather than the broad injunctive powers available under the general provisions of the chapter. Section 22.8(1) vests the court with injunctive power to preclude parties from disseminating public records under certain circumstances. Section 22.8 provides:

1. The district court may grant an injunction restraining the examination, including copying, of a specific public record or a narrowly drawn class of public records.... Such an injunction may be issued only if the petition supported by affidavit shows and if the court finds both of the following by clear and convincing evidence:

a. That the examination would clearly not be in the public interest.

b. That the examination would substantially and irreparably injure any person or persons.

■ This section also instructs the district court to "take into account the policy of this chapter that free and open examination of public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to

public officials or others." *Id.* § 22.8(3). This power is independent of the general injunctive powers available under the other provisions of the open records law, including section 22.7. *Northeast Council,* 513 N.W.2d at 759; *Telegraph Herald,* 297 N.W.2d at 528.

■ The district court found, as a matter of law, that the requirements of section 22.8 had been met and enjoined Gabrilson from copying the assessment or disseminating its content to the public. The court reiterated that the injunctive power was exercised independently of any relief available under section 22.7. Gabrilson contends that this injunction was improperly granted because it was neither specifically pled nor requested by the defendant, thus depriving plaintiff of her due process rights to notice and hearing, as provided by statute. *See* Iowa Code § 22.8(1). In response, Flynn contends that his rule 179(b) motion was effectually a petition for injunctive relief, even though it was not labeled as such. But nowhere does Flynn make mention of the remedy available under section 22.8. Instead, he prayed that the court hold "as a matter of law that Carolyn Gabrilson cannot publish, disseminate, and distribute the Eleventh Grade Assessment Test and the scoring rubrics, because [under section 22.7] these documents are confidential." Flynn contends Gabrilson had proper notice and an opportunity to be heard at the hearing on the motions to enlarge and asserts that his affidavit submitted with his motion for summary judgment meets the proof requirements of section 22.8.

Plaintiff urges us to answer the question of whether the court has inherent power under section 22.8 to grant injunctive relief when section 22.8 has not been specifically pled by the party seeking such relief. Taken in its entirety, however, our open records law diminishes the need to answer this procedural question. Chapter 22 provides a number of remedies for its violation, one of which is the injunctive power granted under section 22.8. *See Marcus v. Young,* 538 N.W.2d 285, 289 (Iowa 1995). In addition to the relief available under section 22.8, section 22.5 provides that all rights under the chapter, including those implied by section 22.7, may be enforced by mandamus or injunction, "whether or not any other remedy is available." Iowa Code § 22.5; *Marcus,* 538 N.W.2d at 289. Thus, even if an injunction is not available under section 22.8 because of a procedural or other defect, the court nevertheless has the power to enjoin a party pursuant to the separate and independent provisions of section 22.5, which give force to the exclusions found in section 22.7.

■ To deprive district courts of injunctive remedies under these circumstances would frustrate the purpose of the chapter— if, by definition, the assessment in question is a confidential record, then enjoining its disclosure would be the appropriate equitable relief. Section 22.10 provides that "any aggrieved person ... may seek judicial enforcement of the requirements of this chapter in an action brought against the lawful custodian *and any other persons who would be appropriate defendants under the circumstances.*" Iowa Code § 22.10 (emphasis added). In the instant case, Gabrilson is an appropriate person against whom the requirements of chapter 22 need be enforced. She has in her possession records that are confidential and should not be permitted to compromise their confidential nature by distributing them en masse. Thus, the district court was correct in enjoining Gabrilson from distributing copies of the assessment. As a matter of law, if a record is granted confidential status under section 22.7, then an injunction is proper when persons seek to unlawfully disclose those records, be they the custodian or anyone else. To hold otherwise would render the confidentiality protection meaningless. In this instance, it makes no difference whether the injunction was labeled as being pursuant to section 22.8 or otherwise. Plaintiff was not denied her due process rights—her own pleadings and brief indicate she was aware that the issue in dispute was the confidentiality of the assessment and that if the issue was decided against her, then she would be prohibited from distributing it.

IV. Inherent Rights as a School Board Member

A. Standard of Review

■ Gabrilson also appeals the district court's decision to strike Count II of her

original petition for mandamus. Mandamus is an equitable action and our review is de novo. Iowa Code § 661.3; *Fitzgarrald v. City of Iowa City,* 492 N.W.2d 659, 663 (Iowa 1992). In her original petition, Gabrilson claimed she has inherent rights as a school board member to review public and confidential records alike. The court, in dismissing Count II, found that individual school board members have no greater rights than ordinary citizens under chapter 22. We disagree.

## B. Rights of School Board Members

■ School board members are charged with authority to regulate the affairs of the district. Iowa Code § 274.7. Members of the school board are granted policy making power and to adequately exercise that power, we hold that they generally should be allowed access to both public and private records that are necessary for the proper discharge of their duties. *See generally* Iowa Code ch. 279. We agree that "members of the Board of Education occupy a fiduciary position and are under a duty to make detailed inquiry into any matter which appears to be wrong." *Lane v. Blair,* 162 W.Va. 281, 250 S.E.2d 124, 126 (1978). This duty necessarily implies that school board members should have access to records and documents of the district, subject to the legal constraints of chapter 22, in order to give effect to the authority granted them by statute.

■ Gabrilson urges us to find that any member of a governing body has an inherent right to access public and confidential records. But we need not make such a broad determination. In the instant case, the duties uniquely charged to a school board put its members in a lawful position to review the assessment, subject to the confidentiality provisions of chapter 22. This does not mean, however, that her access to the records and what she may do with them is without limitation. Although Gabrilson is free to examine the assessment herself, the district court has properly enjoined her under section 22.7(19) from making its content public, and she is bound by that order irrespective of her status as a school board member.

## C. Board Policy 101.9

Presumably as a result of Gabrilson's requests for disclosure of the assessment, the school board has chosen to curtail its own power to access these records. The board adopted policy 101.9, which provides:

All requests for information regarding ... the Eleventh Grade Assessments or other similarly developed programs will be made through the Office of the Superintendent. ... Under these procedures requests which come from a board member will be reviewed by the Superintendent and the Board President [who] will determine if the materials requested should be made available to the board member.

The policy cites the provisions of chapter 22 relating to the confidentiality of trade secrets and examinations in restricting access to the assessment. Gabrilson challenges the legality of this policy on the basis that it unfairly precludes a dissenting member of the board from obtaining information that is necessary to determine the legality of school board action. We agree with Gabrilson's challenge to the validity of this order.

■ It is a general principle of law that the courts will give broad deference to discretionary decisions of school boards and that persons aggrieved by decisions of a board must normally appeal to the state board of education for relief. *See* Iowa Code § 290.1; *Board of Directors v. Green,* 259 Iowa 1260, 1265, 147 N.W.2d 854, 857 (1967). But the adoption of policy 101.9 is not merely a matter of the discretion of the school board. Rather, this presents a case where the plaintiff has expressly challenged the power of the school board to adopt a policy that delegates the discretionary authority granted to it by statute to its agent. In cases where the power of a school board is in question, we have held that the courts of the state are the sole arbiters. *Green,* 259 Iowa at 1265, 147 N.W.2d at 857; *Center Township Sch. Dist. v. Oakland Indep. Sch. Dist.,* 251 Iowa 1113, 1117–19, 104 N.W.2d 454, 456 (1960); *Altman v. Independent Sch. Dist. of Gilmore City,* 239 Iowa 635, 641, 32 N.W.2d 392, 395 (1948); *Courtright v. Consolidated*

*Indep. Sch. Dist. of Mapleton,* 203 Iowa 26, 30, 212 N.W. 368, 370 (1927). Thus, this court has proper jurisdiction over this question even though no appeal was made to the state board. *Green,* 259 Iowa at 1265, 147 N.W.2d at 857.

■■■ It is a fundamental tenet that a school board may not abrogate its power to regulate the affairs of the district to an agent. As this court has stated,

> Rule-making by school boards involves the exercise of judgment and discretion. The legislature has delegated rule-making power to those boards, and the general principle is that while a public board or body may authorize performance of ministerial or administrative functions by others, it cannot re-delegate matters of judgment or discretion.

*Bunger v. Iowa High Sch. Athletic Ass'n,* 197 N.W.2d 555, 560 (Iowa 1972) *(citing Kinney v. Howard,* 133 Iowa 94, 110 N.W. 282 (1907)). We have also specifically recognized a limitation on the powers a school board may delegate to a superintendent or to board members. " 'In accordance to the rule applicable to public boards and officers generally, . . . a board of education, . . . cannot lawfully delegate to others, *whether to one or more of its members, or to any school officer,* . . . the exercise of any discretionary power conferred on it by law.' " *Bunger,* 197 N.W.2d at 560 (emphasis added) (quoting 78 C.J.S. *Schools and School Districts* § 122, at 910). Determination of school board access to school records, or specifically to the eleventh grade assessment, is not a ministerial or administrative matter. Rather, it is precisely the type of discretionary decision the legislature has empowered the school board to make.

Furthermore, we do not believe it would be good public policy to permit the school board, or any other governmental body, for that matter, to withhold information from members who happen to be in the minority. Even though Gabrilson may hold an unpopular view concerning the district's educational philosophy, she should not be denied an opportunity to access and challenge the materials as is necessary to fulfill her duties as a school board member. This court has held

that reasonableness is crucial in determining the validity of a school board rule. *Id.* at 564. To deprive Gabrilson of access to these records would effectively prohibit her from exercising the fiduciary duties imposed on her by law. Thus, policy 101.9 is unreasonable and cannot be enforced.

We therefore reverse the district court's dismissal of Count II of the plaintiff's petition. Gabrilson is free to examine the assessment in order to fulfill her duties as a school board member. She does not have the right, however, to copy, disseminate, or publish the contents of those records, due to their confidential nature as established under section 22.7(19).

## V. Reliance on Advice of Private Attorney

Finally, Gabrilson contends that Flynn cannot escape personal liability for a violation of chapter 22 because he failed to reasonably rely on the advice of an attorney authorized by statute. *See* Iowa Code § 22.10(3)(b)-(3)(c). She claims that Flynn, as custodian of the records, improperly relied on private counsel and asserts that the county attorney is the only proper counsel from whom to seek advice for the school district. Gabrilson argues that if it is determined Flynn violated chapter 22 by failing to release the assessment, he should be liable for the statutory fine and plaintiff's attorney fees. But since we hold that the documents in question were confidential under section 22.7 as a matter of law, the plaintiff is neither entitled to attorney's fees nor is the custodian personally liable for failure to disclose them. This question is moot.

**AFFIRMED IN PART AND RE-VERSED IN PART.**